# 25-2710-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

FRANK CORSINI, LIBERTY-CITIC ENERGY CAYMAN LTD.,
LIBERTY ECO ENERGY LLC,

*Plaintiffs-Appellants,*

— v. —

EDWARD J. REICH, JEFFREY S. GERON, BOIES SCHILLER
FLEXNER LLP, DENTONS US LLP,

*Defendants-Appellees,*

JAMES M. COSTAN, CHRISTOPHER GREEN, IAN DUMAIN,
WILLIAM OHLEMEYER,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## BOIES SCHILLER FLEXNER LLP

ERIC J. BRENNER
CRAIG A. WENNER
ROBERT M. MCCUTCHEON
BOIES SCHILLER FLEXNER LLP
*Attorneys for Defendant-Appellee*
 *Boies Schiller Flexner LLP*
55 Hudson Yards, 20th Floor
New York, New York 10001
(212) 446-2300

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUE ON APPEAL ............................................................................ 1

STATEMENT OF THE CASE ............................................................. 2

      A.     Plaintiffs Engaged BSF to Enforce the Power Purchase Agreement ("PPA"). ........................................................................... 3

      B.     BSF Sued to Enforce the PPA in an ICC Arbitration Against SENELEC. ........................................................................... 5

      C.     Plaintiffs Now Disavow the Arbitration Claims and Seek Instead to Recover the Same Damages Based on Bogus "Racketeering" Claims Against BSF. ............................................................. 8

      D.     The District Court Dismissed Plaintiffs' Frivolous Complaint in Its Entirety for Failure to State a Claim. ............................... 12

SUMMARY OF THE ARGUMENT ................................................... 15

ARGUMENT ..................................................................................... 17

I.     THE DISTRICT COURT'S COMPREHENSIVE AND WELL-REASONED DECISION SHOULD BE UPHELD. .................................. 17

      A.     Applicable Law and Standard of Review............................... 17

      B.     The District Court Correctly Held That Plaintiffs Failed to Allege a Cognizable Predicate Act for Their Racketeering Claims. .............. 17

           1.     Litigation Conduct Does Not Constitute a Racketeering Predicate Act Under Binding Second Circuit Precedent. ......... 18

           2.     Plaintiffs Failed to Allege Domestic Conduct that Would Satisfy the Elements of the Predicate Act Statutes ................... 23

i

3. Plaintiffs' Predicate Act Allegations Failed to Satisfy the Heightened Pleading Requirements Under Rule 9(b) and Even Notice Pleading Under Rule 8. ........................................25

C. The District Court Properly Dismissed Plaintiffs' Remaining State Law Claims...........................................................................27

II. THERE ARE ADDITIONAL BASES FOR DISMISSAL THAT WERE NOT REACHED BY THE DISTRICT COURT. .........................................30

A. Plaintiffs' Irresponsible Claims Are Implausible as a Matter of Law. ..................................................................................30

B. The RICO Claim Fails to Adequately Allege Several Key Elements Beyond Just the Failed Predicate Acts. ..............................32

CONCLUSION .......................................................................................37

CERTIFICATE OF COMPLIANCE ........................................................38

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs.*,
  483 U.S. 143 (1987)................................................................35

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ...................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................13

*Azima v. Decehert LLP*,
  2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024) ........................19

*Behrens v. JPMorgan Chase Bank N.A.*,
  2019 WL 1437019 (S.D.N.Y. Mar. 31, 2019)..........................31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................13

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) .....................................................4

*Butcher v. Wendt*,
  975 F.3d 236 (2d Cir. 2020) ...................................................20

*Carroll v. U.S. Equities Corp.*,
  2020 WL 11563716 (N.D.N.Y. Nov. 30, 2020)........................33

*Chester Park View, LLC v. Schlesinger*,
  2024 WL 2785140 (S.D.N.Y. May 29, 2024) ..........................20

*Columbia Park E. MHP, LLC v. U.S. Bank Nat'l Ass'n*,
  766 F. App'x 271 (6th Cir. 2019)............................................33

*Dejesus v. HF Mgmt. Servs., LLC*,
  726 F.3d 85 (2d Cir. 2011) .....................................................17

iii

*Doscher v. Mannatt, Phelps & Phillips, LLC*,
    48 N.Y.S.3d 593 (1st Dep't 2017) ................................................. 23, 28

*Entretelas Americanas S.A. v. Soler*,
    2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020) ..................................... 31

*Farag v. XYZ Two Way Radio Serv., Inc.*,
    2023 WL 2770219 (2d Cir. Apr. 4, 2023) ............................ 22, 27, 30

*Fiorilla v. Citigroup Inc.*,
    2022 WL 11245942 (S.D.N.Y. Oct. 19, 2022) .................................. 31

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995) .............................................................. 32

*Grace Int'l Assembly of God v. Fiesta*,
    797 F. App'x 603 (2d Cir. 2019) .................................................... 33

*H.J. Inc. v. NW Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................... 32, 33

*In re Burzyinski*,
    989 F.2d 733 (5th Cir. 1993) .......................................................... 33

*Jordan v. Tilzer*,
    2022 WL 16544335 (2d Cir. Oct. 31, 2022) ................................... 34

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
    2015 WL 2400182 (S.D.N.Y. May 20, 2015) ................................. 32

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ..................................................... passim

*Kovkov v. Law Firm of Dayrel Sewell, PLCC*,
    199 N.Y.S.3d 849 (1st Dep't 2020) ................................................ 28

*LCS Grp., LLC v. Shire LLC*,
    2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) .................................. 20

*McCarthy v. SEC*,
    406 F.3d 179 (2d Cir. 2005) ........................................................... 21

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ...............................................................25

*MinedMap, Inc. v. Northway Mining, LLC*,
    2022 WL 570082 (2d Cir. Feb. 25, 2022) ................................... 32, 33

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 199) ...............................................................23

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
    830 F.3d 152 (2d Cir. 2016) ..............................................................17

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*,
    514 F. App'x 51 (2d Cir. Mar. 18, 2013) ..........................................31

*Rotella v. Wood*,
    528 U.S. 549 (2000)............................................................................35

*Sioson v. Knights of Columbus*,
    303 F.3d 458 (2d Cir. 2002) ..............................................................22

*Sykes v. Mel Harris & Assocs., LLC*,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ...............................................34

*United States v. Turkette*,
    452 U.S. 576 (1981)............................................................................34

*Verizon Commc'ns v. FCC*,
    156 F.4th 86 (2d Cir. 2025) ...............................................................21

*Villoldo v. BNP Paribas S.A.*,
    648 F. App'x 53 (2d Cir. 2016) .........................................................34

*WC Cap. Mgmt., LLC v. UBS Sec., LLC*,
    711 F.3d 322 (2d Cir. 2013) ..............................................................30

*Weaver v. Boriskin*,
    751 F. App'x 96 (2d Cir. 2018) .........................................................20

*Yerdon v. Poitras*,
    120 F.4th 1150 (2d. Cir. 2024) ..........................................................30

**Statutes**

18 U.S.C. § 1341 ...................................................................................18

18 U.S.C. § 1343 ...................................................................................18

18 U.S.C. § 1503 .............................................................................. 18, 23

18 U.S.C. § 1512 .............................................................................. 18, 23

18 U.S.C. § 1515 ...................................................................................23

18 U.S.C. § 1623 .............................................................................. 18, 23

18 U.S.C. § 1691 ...................................................................................32

18 U.S.C. § 1956 ...................................................................................18

18 U.S.C. § 1962 ...................................................................................32

18 U.S.C. § 1964 ...................................................................................29

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 ................................................................................ 1, 29

28 U.S.C. § 1332 ................................................................................ 1, 29

28 U.S.C. § 1367 ...................................................................................29

N.Y. Judiciary Law § 487 .....................................................................18

**Rules**

FED. R. CIV. P. 9(b) ................................................................................17

FED. R. CIV. P. 10(c) ...............................................................................4

Fed. R. Civ. P. 12(b)(6) .........................................................................21

## JURISDICTIONAL STATEMENT

The district court had "subject matter jurisdiction under 28 U.S.C. sections 1331 and 1332(a), as well as 18 U.S.C. section 1964(c)." SPA2; *see also* JA15, Compl. ¶¶ 16–17. The brief of Plaintiffs-Appellants (herein after, "Plaintiffs") incorrectly identified only federal question jurisdiction under § 1331, ignoring that the district court also had diversity jurisdiction under § 1332. Br. 1.[1]

This Court has jurisdiction over Appellants' appeal under 28 U.S.C. § 1291.

## ISSUE ON APPEAL

Whether the district court (Swain, D.J.) correctly dismissed a disgruntled former client's RICO and tort claims against its former counsel in an international arbitration, Defendant-Appellee Boies Schiller Flexner LLP ("BSF"), where Plaintiffs: (a) assert RICO claims based on BSF's litigation activities that cannot satisfy the predicate act requirement under controlling Second Circuit precedent; (b) rely on fraud theories without identifying a single specific representation by BSF that was false, misleading, or fraudulent; (c) allege predicate acts under statutes that require domestic conduct which the Complaint does not and cannot allege; (d) suffered no out-of-pocket loss, having paid nothing under their contingency fee arrangement with BSF; and (e) seek damages measured by the value of an arbitration claim they now plead was always meritless.

---

[1]    Citations to "SPA" and "JA" are to Plaintiffs' Special Appendix and Appendix. "Br." refers to Plaintiffs' brief.

1

## STATEMENT OF THE CASE

In this case, a disgruntled client seeks hundreds of millions of dollars in damages from its former lawyers based on irresponsible, overheated, and unparticularized accusations of "fraud" and "racketeering." Plaintiffs contend that BSF engaged in self-dealing and knowingly pursued baseless claims on their behalf in an international arbitration proceeding for the purpose of "steal[ing] money" from Plaintiffs and "generat[ing] millions of dollars in fees." JA19, 21, Compl. ¶¶ 41 & 55. But Plaintiffs also admit, as they must, that BSF was acting on a contingent basis in the arbitration, did not receive a penny in fees (or otherwise) from Plaintiffs, and only stood to profit if Plaintiffs were successful in pursuing those claims. JA23–24, Compl. ¶¶ 64–67.

In other words, Plaintiffs' lawsuit rests on the incoherent assumption that BSF would deceive Plaintiffs about the merits of the prior arbitration claim even though, if the claims lacked merit, BSF faced the loss of its own substantial investment in the arbitration with no expectation of being able to obtain fees from Plaintiffs. To make their claims even less plausible, Plaintiffs' Complaint demands hundreds of millions of dollars in damages based on the alleged expected recovery in the failed arbitration claim, even when this lawsuit is, again, premised on Plaintiffs' new theory that the arbitration claim deserved to fail.

### A. Plaintiffs Engaged BSF to Enforce the Power Purchase Agreement ("PPA").

In September 2015, Plaintiff Liberty CITIC Energy Cayman Ltd. ("Liberty CITIC") and its Managing Member, Plaintiff Liberty Eco Energy LLC ("Liberty Eco"), acting through Liberty Eco's Managing Member, Plaintiff Frank Corsini (together with Liberty CITIC and Liberty Eco, the "Plaintiffs"), engaged BSF to prosecute claims against SENELEC, the national electricity company of Senegal, based on its alleged wrongful disavowal of a May 16, 2012, Power Purchase Agreement ("PPA"). JA21, Compl. ¶ 56. The parties' engagement letters memorialized that BSF would pursue such claims through arbitration in the International Chamber of Commerce (the "ICC") on a contingent basis. JA23, Compl. ¶ 64. Plaintiffs had no obligation to pay BSF's legal fees or out-of-pocket costs except upon a successful recovery. The engagement letters also memorialized that BSF's representation was conditioned on the execution of a litigation funding agreement whereby a funding group would take on certain financial obligations in return for a share of BSF's interest in a contingency fee. *Id.* ¶ 65. In signing these letters, Plaintiffs acknowledged that they had either consulted with separate counsel of their choice or knowingly and willingly decided not to consult with such counsel. *See, e.g.*, JA98, 103, 119–20.[2]

---

[2] The district court properly considered, and this Court may also consider, both the allegations of the Complaint as well as any materials incorporated by

Prior to BSF's involvement, Plaintiffs had engaged the Dentons firm to negotiate the PPA that Plaintiffs claimed SENELEC had breached. JA15–16, Compl. ¶¶ 20–32. In their engagement letter with BSF, Plaintiffs acknowledged that "Liberty owes Dentons approximately $1,900,000 in unpaid legal fees and costs" arising from this representation, as well as their "desire" to obtain "Dentons' cooperation in connection with the" arbitration and their intent to enter into a separate agreement with Dentons addressing these matters. JA105. On December 6, 2016, Plaintiffs, Dentons, and BSF entered into such an agreement. JA25, Compl. ¶ 72.

Plaintiffs now claim this agreement was "misleading and fraudulent" and "illegal," JA25, Compl. ¶¶ 74–75, but the Complaint identifies no such illegalities, let alone intentionally "fraudulent" statements. For example, Plaintiffs contend that this agreement "asserted, with no genuine factual basis, that Liberty ECO owed Dentons $1,883,909.10," JA26, Compl. ¶ 78(b), even though Plaintiffs' engagement letter with BSF provided that factual basis, confirming the receivable, as did a "Whereas" clause in the December 2016 Agreement itself. And Plaintiffs provide no facts to substantiate their allegation of an "illegal scheme," JA 26–27,

reference therein. *See* FED. R. CIV. P. 10(c); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). Here, the Complaint expressly relies on, and incorporates, BSF's engagement letters, the Final Award, the PPA, and certain BSF legal opinions. *See, e.g.*, JA15, 21–25, 27, 32, Compl. ¶¶ 20, 56, 61, 64, 71, 73, 79, 103.

Compl. ¶ 78, based on ordinary course cooperation provisions that granted BSF access to key Dentons personnel for interviews and case documents, and required a Dentons partner to testify, deliver a witness statement, and be prepared by BSF in connection therewith. Indeed, while the Complaint overheatedly asserts that the agreement gave BSF "unlimited power" to control Dentons' cooperation on an "unlimited basis," *id*., the agreement itself actually just provides that Dentons would provide "reasonable cooperation to BSF in connection with the Litigation as BSF reasonably requests," JA114, 140.

### B. BSF Sued to Enforce the PPA in an ICC Arbitration Against SENELEC.

On June 15, 2017, BSF, instructed by Plaintiff Liberty-CITIC, commenced an ICC arbitration against SENELEC to enforce the PPA (the "ICC Arbitration"). JA28, Compl. ¶ 82. As reflected in the final award, JA417, issued by the tribunal (the "Tribunal"), Plaintiff Corsini had accused SENELEC of breaching the PPA and threatened arbitration in a demand letter in March 2015, JA478, which was approximately six months before BSF was retained—meaning, before BSF was even involved, Plaintiffs had already determined that the PPA was enforceable and sought to enforce it against SENELEC.

In the ICC Arbitration, Plaintiffs' case relied on sworn witness statements from Plaintiff Corsini contending the PPA was enforceable and, contrary to SENELEC's defenses, had been approved by the SENELEC Board. *See, e.g.*,

5

JA469. The Tribunal noted that Corsini testified that the PPA was enforceable and accepted by SENELEC, which Corsini contended was "consistent with contemporaneous documentary evidence." JA543–44 (citing Corsini's own email to Dentons US LLP ("Dentons") confirming the execution of the PPA and acceptance by the board of SENELEC).

The Tribunal held an evidentiary hearing in 2018 and issued the Award on May 4, 2020. The Award, among other things, criticized the "reprehensible" litigation conduct of SENELEC, whose arbitration counsel—having switched sides—are among Plaintiffs' counsel in this litigation. JA456, 554–55, 557. The Tribunal also considered, and rejected, SENELEC's attacks on BSF's funding arrangements, which Plaintiffs seek to resuscitate here. JA516–19. The Tribunal recognized that "[t]hird party and contingency funding are a feature of modern litigation" and "neither Respondent nor its experts have put forward any meaningful argument to support the accusation of violation of [the N.Y. bar] rules by BSF." JA519.

As to whether the PPA was enforceable, the Tribunal determined that the contract was not a "mere draft" and Liberty CITIC was "entitled to consider [it] valid, until found otherwise by a competent court or arbitral tribunal." JA515–16, 544. However, the Tribunal concluded that the "record [was] not entirely clear as to the Parties' actual intentions," JA544, and found that the PPA did not fall

squarely into any of the categories of transactions in Article 12 of SENELEC's Statutes requiring approval by its Board of Directors, JA549. Ultimately, the Tribunal held that the evidence, "taken together," was enough to "raise serious doubts that, at the time of its execution, the October 2012 PPA was understood by the Parties to be a proper contract binding in all its parts," JA547, and that the "most reasonable conclusion" was that Board approval was indeed required. JA549. The Tribunal thus held that "the October 2012 PPA was not a binding contract, the specific provisions of which were capable of giving rise to enforceable obligations for the Parties." JA551.

Although it ruled in favor of SENELEC on enforceability, the Tribunal held SENELEC was not "the prevailing party," as "it was unsuccessful on all its preliminary objections," and "since the very beginning until shortly before the submission of the draft of the award to the ICC, and well after the closing of the proceedings, this arbitration was seriously marred by disruptions and delays almost entirely due to Respondent." JA554–55, 557. The Tribunal accordingly rejected SENELEC's fee-shifting request. While the Tribunal made the full $1,220,000 cost of the arbitration the responsibility of Liberty-CITIC, none of Plaintiffs ever actually paid those costs, which were BSF's obligation under the terms of the engagement. JA98. The Complaint, correctly, does not claim otherwise. JA32,

Compl. ¶ 104 (alleging the Tribunal "imposed" this cost, but not that Liberty-CITIC paid it).

### C. Plaintiffs Now Disavow the Arbitration Claims and Seek Instead to Recover the Same Damages Based on Bogus "Racketeering" Claims Against BSF.

The Complaint does not try to claim that the adverse decision in the ICC Arbitration was somehow the result of malpractice by BSF. Instead, Plaintiffs have brought RICO claims against BSF and three of its former partners, who were all dismissed for failure to serve, based on the nonsensical premise that Liberty-CITIC actually deserved to lose the ICC Arbitration all along yet, somehow, should still receive the same hundreds of millions in damages in this case that they sought in the (supposedly baseless) ICC Arbitration.

Plaintiffs allege that BSF "knew, or should have known, no basis existed for" Liberty-CITIC's claim, JA28, Compl. ¶ 83, yet (i) "lie[d] to" Plaintiffs "about the enforceability of the PPA," JA27–28, Compl. ¶ 81, (ii) "claim[ed] more than $250 million in damages … despite the fact that Boies Schiller never made an analysis or determination which would have revealed that no valid or enforceable PPA ever existed," JA24, Compl. ¶ 70, and (iii) made arbitration "filings" containing "materially false information and lies" regarding whether a "contract existed and was in force between Liberty-CITIC and SENELEC," JA33, Compl. ¶

8

109. Plaintiffs attempt to cast these allegations as RICO predicates, accusing BSF of criminal misconduct.

Plaintiffs do not identify a single actual statement made by BSF that was supposedly false, let alone knowingly false. Nor does the Complaint offer any plausible particularized allegations that could support Plaintiffs' foundational assumption that BSF would, as part of a contingent fee arrangement, invest enormous time and resources in furtherance of a claim BSF knew was worthless. Moreover, notwithstanding Plaintiffs' core allegation that "[BSF] made no effort to determine whether there was a valid and enforceable PPA," JA23, Compl. ¶ 63, the Complaint itself cites, and incorporates by reference, a BSF research memorandum that addressed the issue of whether "SENELEC's failure under Article 9 and Section 3.2(b) of the PPA to obtain and deliver the Sovereign Guaranty operate as the failure of a condition precedent under Article 18(a) and thereby excuses SENELEC from further performance under the PPA?" JA27, Compl. ¶ 79; JA148. Plaintiffs assert this memo somehow shows BSF had "presumptive knowledge" the "October 2012 PPA was not valid and effective." JA27, Compl. ¶ 80. But the memo concludes—both under New York law and based on the advice of retained Senegal law experts—that "SENELEC's failure to meet its obligation(s) under Section 3.2(b) and Article 9 of the PPA resulted in a breach of the PPA" and that, "under Senegal law, SENELEC's breach gives Liberty-CITIC the right to recover

damages, including lost profits." JA151. The Complaint contains no plausible allegation that these conclusions were knowingly false, nor does it describe a conceivable motive for BSF to falsify its legal conclusions.

Plaintiffs' other core allegation involving BSF is that a former partner supposedly "coerc[ed] and extort[ed] Mr. Corsini" to "testify falsely" at the arbitration hearing "on April 30, 2018." JA31, Compl. ¶¶ 96–101. That is, Plaintiffs take the position that Corsini perjured himself before the Tribunal, but claim BSF is to blame. The only "threat" identified in the Complaint as a basis for claiming coercion is the partner's supposed statement that BSF would allegedly "send Mr. Corsini away" on "a plane back home." JA31, Compl. ¶¶ 100–01. The Complaint does not try to show how this "threat" gave rise to a reasonable inference that Corsini plausibly faced such "fear" that he had no choice but to commit perjury. The Complaint also does not identify—by cites to the hearing transcript or otherwise—which of Corsini's specific sworn answers he now seeks to escape as supposedly "coerced" perjury. This oversight is not only a matter of pleading specificity, but it also undermines the plausibility of Plaintiffs' allegations, since Corsini (like all witnesses in ICC arbitration) submitted detailed witness statements to the Tribunal long before the hearing at which he was supposedly "extorted." JA164, 205–09, 213 (citing Corsini as representing that Liberty-CITIC "did not consider that there were any concerns as to the validity of

10

the October 2012 PPA"). The Complaint does not claim that Corsini's written testimony was tainted by coercion, and the Complaint fails to identify any factual claims in Corsini's hearing testimony that were any different from the facts that were already presented to the Tribunal in his prior written testimony or any of the other many prehearing submissions that Plaintiffs instructed BSF to submit.

In addition to the RICO claims, the Complaint also brings state law claims for fraud (Count III), violations of New York Judiciary Law § 487 (Count IV), conspiracy (Count V), and unjust enrichment (Count VI). These causes of action also fail to identify any particularized fraudulent statements by BSF. None of the causes of action in the Complaint allege any coherent theory of relief in circumstances where Plaintiffs received the benefit of first-class counsel in the ICC Arbitration without having to pay a dime while, for its part, BSF has recouped none of the contingent fees that were its hoped-for reward for its investment in the matter. Plaintiffs' prayer for relief seeks—identically for each cause of action— "compensatory damage to be determined at trial by jury but believed to exceed $300 million." JA48, Compl. ¶ 180. The Complaint, however, does not explain how the hundreds of millions of dollars that Liberty-CITIC sought to recover from SENELEC in the ICC Arbitration could now plausibly be damages in this lawsuit, which is premised on the theory that Plaintiffs claims in the ICC arbitration were baseless.

### D. The District Court Dismissed Plaintiffs' Frivolous Complaint in Its Entirety for Failure to State a Claim.

BSF moved to dismiss Plaintiffs' Complaint on October 31, 2024. JA61. BSF raised multiple, independent bases for dismissal, including that (i) Plaintiffs' claims are implausible on their face under *Iqbal* and its progeny; (ii) litigation conduct cannot satisfy the predicate act requirement of a RICO claim under this Court's decision in *Kim v. Kimm*, 884 F.3d 98,103 (2d Cir. 2018); (iii) Plaintiffs' alleged predicate acts and allegations of fraud do not satisfy Rule 9(b)'s particularity standard or otherwise state a claim; (iv) conduct in connection with a single litigation cannot constitute a cognizable "pattern" of racketeering activity; (v) the Complaint does not plead an "enterprise" distinct from the alleged "pattern"; (vi) the Complaint does not allege racketeering injury or that BSF's conduct caused any injury; (vii) Plaintiffs' RICO claims are time-barred; and (viii) Plaintiffs' state law causes of action similarly fail to state a claim and are frivolous. JA62–63. Dentons also moved to dismiss based on similar arguments as well as a prior agreement in which Plaintiffs released all claims against Dentons. JA330.

The district court issued a Memorandum Order dismissing Plaintiffs' Complaint with prejudice on September 30, 2025. SPA1. The court began with the familiar legal standard that it "accepts all well-pleaded allegations in the Complaint … as true and draws all reasonable inferences in Plaintiffs' favor." SPA2. The court then carefully walked through the allegations of the Complaint, appropriately

crediting Plaintiffs' allegations and citing and discussing additional documents the Complaint relied on. SPA2–9.

In its discussion of the claims, the court cited the correct standard on a Rule 12(b)(6) motion, which requires that the plaintiff "plead enough facts to state a claim to relief that is plausible on its face.'" SPA10 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court observed that a "proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And that "where a plaintiff brings a claim 'premised on allegations of fraud,' she must satisfy the heightened pleading standards of Rule 9(b)." *Id.* (citation omitted).

With respect to the specifics of Plaintiffs' allegations, the district court noted that while "Plaintiffs allege a multitude of criminal violations, their claims suffer from an equally large number of flaws." SPA12. Focusing first on Plaintiffs' failure to establish any predicate acts of racketeering, the district court held, *see* SPA12–19, that (i) seven of Plaintiffs' eight alleged RICO predicate offenses were based on litigation conduct and therefore barred by this Court's decision in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018); (ii) for the sole remaining alleged predicate offense, extortion, Plaintiffs never alleged that Defendants obtained Plaintiffs'

13

money or property and in fact alleged that "Plaintiffs left their bill to Dentons unpaid, were represented by Boies Schiller on contingency, and did not pay the imposed costs of arbitration;" (iii) most of Plaintiffs' claims implicated Rule 9(b) and fell short of satisfying the heightened pleading requirements for fraud, having never identified "the allegedly false and misleading statements;" (iv) several of Plaintiffs' alleged RICO predicate offenses, as well as their claim under New York Judiciary Law section 487, require misconduct in a domestic forum, which Plaintiffs obviously did not allege as the arbitration was in France; (v) Plaintiffs, who "do not allege that they paid Boies Schiller" and "do not even allege that they paid the costs imposed by the arbitral tribunal," failed to allege that Defendants were unjustly enriched at their expense; and (vi) Plaintiffs' claims for civil conspiracy and conspiracy to engage in unlawful racketeering failed because both claims required Plaintiffs' other claims to succeed.

The district court found that these deficiencies were incurable. The court further noted that in their briefing Plaintiffs, who were represented by counsel, "made no attempt to address Defendants' arguments or even try to save their claims." SPA20. Accordingly, the district court dismissed Plaintiffs' claims with prejudice. *Id.*

## SUMMARY OF THE ARGUMENT

The district court correctly identified several fatal flaws with Plaintiffs' claims. Plaintiffs failed to plead any predicate acts for their RICO claims because the underlying conduct was comprised of litigation activities—such as, pleadings, arguments, legal opinions, and the submission of evidence to a tribunal—which cannot form the basis of a racketeering claim under binding precedent. Each of the predicate acts is also insufficiently pled on multiple other grounds, such as the fact that Plaintiffs accuse BSF of committing a fraud without ever identifying BSF's allegedly false or misleading statements. Additionally, the predicate act statutes require that the alleged misconduct occurred in a domestic proceeding rather than a foreign arbitration.

With numerous bases on which to dismiss the Complaint, the district court did not even reach other fundamental flaws with the claims. They are incoherent and utterly implausible, as they depend on a theory that makes no sense. That is, Plaintiffs contend BSF took a case on contingency knowing the claim would fail in order to extract fees from Plaintiffs. But Plaintiffs never paid and never would have to pay those fees, and BSF would only make money if the case succeeded. Plaintiffs also hired BSF to prosecute the claim after they already took the position that the claim had merit, but now Plaintiffs contend the claim was meritless all along. And Plaintiffs' damages are nonsensical, as they are calculated based on the

15

expected recovery of the claim in the arbitration, when Plaintiffs at the same time plead the claim had no value.

Plaintiffs' brief does nothing to grapple with these issues and completely ignores the district court's analysis. Instead, Plaintiffs simply pepper their brief with generally applicable legal standards but never identify what the district court should have done differently. And when Plaintiffs do finally attempt to engage with some semblance of a legal analysis, they get it flat wrong. Plaintiffs contend the district court failed to appreciate that Plaintiffs suffered a domestic *injury*, when this was not part of the opinion at all—the district court correctly held that the predicate acts needed to be based on *conduct* in a "domestic" forum—an entirely different issue even if it also implicates the word "domestic." Plaintiffs then suggest the district court improperly exercised *supplemental* jurisdiction over the state law claims, when the district court had original *diversity* jurisdiction as Plaintiffs' own Complaint recognized. Plaintiffs appear to expect BSF and this Court to do the work for them in identifying their arguments, but that is no one's job but theirs, and they failed. The decision should be upheld.

**ARGUMENT**

## I. THE DISTRICT COURT'S COMPREHENSIVE AND WELL-REASONED DECISION SHOULD BE UPHELD.

### A. Applicable Law and Standard of Review.

This Court "review[s] *de novo* a District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kim*, 884 F.3d at 103 (quoting *Iqbal*, 556 U.S. at 678). Fraud claims require that a complaint "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Pleadings that contain no more than conclusions … are not entitled to the assumption of truth" that is otherwise applicable on a motion to dismiss. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2011). And "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

### B. The District Court Correctly Held That Plaintiffs Failed to Allege a Cognizable Predicate Act for Their Racketeering Claims.

Plaintiffs contend that "[t]he Memorandum Order … fails to explain how and why Mr. Corsini and the other plaintiffs-appellants failed to satisfy all the

17

specific statutory requirements under RICO and the relevant precedents," Br. at 26, but the district court did just that. The court closely analyzed Plaintiffs' Complaint and concluded that Plaintiffs failed to allege a single cognizable predicate offense. SPA11–17. With no predicate acts, there could be no racketeering claim, and so there was no need for the district court to reach the other elements under RICO, such as pattern and enterprise. Plaintiffs do not wrestle with any of the district court's reasoning. Indeed, Plaintiffs do not even cite, let alone analyze or distinguish the decision in *Kim* that was cited repeatedly in the district court's opinion. The district court's holding was correct.

### 1. Litigation Conduct Does Not Constitute a Racketeering Predicate Act Under Binding Second Circuit Precedent.

The district court correctly held that all but one of the alleged RICO predicate offenses in the Complaint were based on litigation conduct by attorneys in a pending case and must therefore fail under this Court's decision in *Kim*. SPA12–17. [3] Under *Kim*, "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104. The

---

[3] That is, Obstruction of Justice (18 U.S.C. § 1503), Perjury (18 U.S.C. § 1623(a)), Witness Tampering (18 U.S.C. § 1512), Deceit on the Court (N.Y. Judiciary Law § 487, Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343), and Money Laundering (18 U.S.C. § 1956(a)(2)(A)). The district court did not analyze *Kim* as to the alleged predicate offense of extortion and dismissed it for other reasons. *See* SPA16–17. But BSF argued below, JA79, and continues to maintain, that the allegation of extortion here is also barred by *Kim* because it is based on BSF's actions in advocating for Plaintiffs in the arbitration.

"more" that is required under *Kim* to elevate allegedly fraudulent litigation conduct to a predicate act means something akin to "'(1) a mass scheme, (2) corruption of the decision-makers in the court proceedings, or (3) the fraudulent securing of default judgments.'" SPA12–13 (quoting *Azima v. Decehert LLP*, No. 22-CV-8728 (PGG) (JEW), 2024 WL 4665106, at *20 (S.D.N.Y. Sept. 26, 2024)).

Like here, the *Kim* plaintiff alleged the defendants committed the RICO predicate offenses of obstruction of justice, mail fraud, and wire fraud by submitting declarations in a lawsuit "with full knowledge that they contained fraudulent representations." *Id.* at 103. Dismissing the RICO claims, this Court held that "where … a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Id.* at 105.

*Kim* controls because all of Plaintiffs' RICO allegations are based on litigation conduct. *See, e.g.*, JA38, Compl ¶ 132 ("[D]efendants … habitually filed or caused to be filed documents, including declarations sworn to under penalty of perjury, that falsely represented alleged prior judicial proceedings …."); JA39, Compl. ¶ 135 ("[BSF] … engaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive the ICC Tribunal."); JA42, Compl. ¶ 146 ("Defendants knowingly and intentionally prepared court papers, filings and testimony, which defendants knew to be false or misleading, to be

disseminated to the ICC Tribunal and the ICC ….”). Plaintiffs' "interpretation of RICO would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts because any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." 884 F.3d at 104 (cleaned up).

The district court's decision falls in line with courts applying *Kim* to reject racketeering claims based on litigation conduct. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("[A]llegations that the private defendants made false statements in their various filings [including by a lawyer defendant] and in the course of testifying in the arbitration … cannot support a claim of a substantive RICO violation."); *Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (summary order) (creating fraudulent assignment and filing summary judgment motion in a foreclosure action was "insufficient to show a RICO predicate act"); *Chester Park View, LLC v. Schlesinger*, No. 23-CV-5432 (CS), 2024 WL 2785140, at *10 (S.D.N.Y. May 29, 2024) ("[P]redicates arising from abusive litigation tactics … are rarely successfully pleaded … and the few that pass muster involve much more than using a single litigation to carry out an alleged fraudulent scheme …."); *LCS Grp., LLC v. Shire LLC*, No. 18-CV-1688 (AT), 2019 WL 1234848, at *10 (S.D.N.Y. Mar. 8, 2019) ("[L]itigation activities in the absence of

corruption—including the preparation and filing of sworn declarations—cannot constitute a RICO predicate act.") (cleaned up).

Plaintiffs do not acknowledge, or even cite, *Kim* in their brief.[4] Instead, Plaintiffs' principal argument on appeal is a conclusory suggestion that the district court's order "in effect ignored the mandate that the allegations of the Complaint be taken as true." Br. at 16. Plaintiffs complain "the District Court drew no inference favorable" to them, and that "[t]his misapplication of the relevant standards violated every guideline applicable to the evaluation of motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* Plaintiffs state repeatedly that RICO is to be read broadly and liberally, citing seminal Supreme Court cases on various specific RICO elements. *See* Br. at 22–27. But Plaintiffs completely ignore that the district court cited, and applied, the correct standards and ignore that the district court's decision turned on the failure to plead predicate acts.

Plaintiffs' arguments also fail to apply any supposedly relevant alternative standard to the facts alleged in the Complaint or explain how the result could be any different. Plaintiffs, for example, do not specify what non-conclusory

---

[4]    It is too late for Plaintiffs to raise these arguments, if any, for the first time on reply. *See Verizon Commc'ns v. FCC*, 156 F.4th 86, 104 (2d Cir. 2025) ("[A]n appellant … who fails to raise an argument in his opening brief generally 'forfeits' that argument."); *see also McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) ("[A]rguments not raised in an appellant's opening brief, but only in his reply brief, are not properly before an appellate court even when the same arguments were raised in the trial court.").

allegations the district court treated as false, or what reasonable inferences the district court failed to make in Plaintiffs' favor, or how that would change the outcome. Plaintiffs' superficial and conclusory argument are wholly insufficient to warrant reversal. *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) ("Perhaps … Appellant intends that we form an argument for him, by looking into the … 'facts' posited in his 'statement of the case,' and then examining various combinations … in the light of the legal doctrine he later mentions. But that is simply not our job.").

In short, Plaintiffs' allegations, their briefing in the district court, and their briefing on appeal consist almost entirely of conclusory statements and case law recitations without analysis. Especially in RICO cases implicating Rule 9(b)'s particularity requirements, courts will not accept a "legal conclusion masquerading as a factual allegation" where "the complaint is devoid of any specific facts or circumstances supporting [Plaintiffs'] assertion[.]" *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (summary order) (cleaned up); *see also Sioson*, 303 F.3d at 460 ("The argument section of the appellant's brief develops not one 'contention' within the meaning of [FRAP 28(a)(8)(A)]. It references only case-law authorities, and never the requisite combination of authorities and putative facts. In short, it is a doctrinal recapitulation masquerading as a legal argument.") (internal footnote omitted).

### 2. Plaintiffs Failed to Allege Domestic Conduct that Would Satisfy the Elements of the Predicate Act Statutes

Apart from *Kim*, the district court also correctly held that Plaintiffs failed to plead facts that would satisfy the elements of any of the alleged predicate acts. Plaintiffs do not contend otherwise on appeal.

Under governing law, the predicate acts on which Plaintiffs' claims rely must concern alleged misconduct in a ***domestic*** court or tribunal, as opposed to a ***foreign*** arbitration, such as the ICC arbitration in France at issue here. *See* SPA12–14 (discussing Plaintiffs' allegations of obstruction of justice, perjury, witness tampering, and deceit on the court); *see also, e.g.*, *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 199) ("To constitute an offense under the [obstruction of justice statute, 18 U.S.C. § 1503], the act must relate to a proceeding in a federal court of the United States."); *Doscher v. Mannatt, Phelps & Phillips, LLC*, 48 N.Y.S.3d 593, 593 (1st Dep't 2017) ("[New York Judiciary Law Section 487] does not apply to conduct outside New York's territorial borders[.]"); 18 U.S.C. § 1512 (limiting section 1512 to "official proceeding[s]," which are limited to United States federal courts (and other proceedings not at issue here), as defined by 18 U.S.C. § 1515(a)(1)); 18 U.S.C. § 1623(a) (limiting statute to "any proceeding before or ancillary to any court or grand jury of the United States"). Because the conduct underlying these alleged predicate acts did

not occur in a domestic forum, the district court properly held that they were not cognizable racketeering predicates.

Plaintiffs do not contest this holding by the district court, and, like with their silence with respect to the *Kim* bar on litigation conduct, Plaintiffs have forfeited arguments to the contrary. To the extent Plaintiffs try to engage with this issue at all, their arguments are just confused. Plaintiffs devote two pages of their brief (Br. at 23-24) arguing that the district court erred in failing to appreciate the legal significance of the fact they suffered "domestic injury". Thus, Plaintiffs argue:

> To the extent that the District Court's Memorandum Order determined that RICO did not apply because some of the conduct took place in Paris, France, during the ICC arbitration, that determination was, quite simply, wrong…. Mr. Corsini, a United States resident who controls the Liberty entities, sustained a "domestic injury" even if some of the conduct at issue took place in France.

Br. at 23. Plaintiffs then go on to argue that they "sustained 'domestic injury' in the United States[.]" *Id.* at 24.

But Plaintiffs' entire argument is irrelevant. BSF never argued, and the district court did not discuss, whether Plaintiffs' alleged injuries (whatever they might be) were *foreign* rather than *domestic* under § 1964(c). As explained above, the district court correctly held, and Plaintiffs do not contend otherwise, that many of the predicate acts fail because they depend on the Defendants' alleged conduct in a foreign, not domestic, proceeding. The law regarding *domestic injury* simply

has nothing to do with the district court's analysis of the domestic conduct requirement of the *predicate acts*, which is both unrebutted and correct.

### 3. Plaintiffs' Predicate Act Allegations Failed to Satisfy the Heightened Pleading Requirements Under Rule 9(b) and Even Notice Pleading Under Rule 8.

Plaintiffs' predicate act allegations overwhelming are based on alleged fraudulent acts, which require Plaintiffs to meet the heightened pleading requirements under Rule 9(b). That rule requires Plaintiffs to "state the contents of the communications, who were involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

The Complaint, however, includes nothing more than "conclusory assertions of deceit" and "do not identify the allegedly false and misleading statements[.]" SPA13 (as to obstruction of justice, perjury, witness tampering, deceit on the court), *id.* at 14–15 (as to mail and wire fraud). Plaintiffs did nothing to cure this deficiency below, such as through a proposed amended pleading. And their appeal brief does not identify what allegations the district court overlooked that would satisfy Rule 9(b) either—indeed, Plaintiffs do not even acknowledge Rule 9(b) in their brief. The district court was correct to dismiss Plaintiffs' claims under Rule 9(b), in addition to the other reasons identified above.

The district court was also correct that Plaintiffs entirely failed to plead extortion or money laundering under any standard. With respect to extortion, Plaintiffs failed to allege that BSF obtained any money or property belonging to Plaintiffs. Under New York Penal Law section 155.05(2)(e), larceny by extortion involves the "wrongful taking" of "property" of another "by means of instilling in him a fear" of certain consequences. The district court held that Plaintiffs alleged predicate offense fails because "Plaintiffs do not allege that Defendants obtained Plaintiffs' money or property, much less that Defendants obtained any such money or property through wrongful means." SPA16. That was correct. Plaintiffs allege that BSF "extorted" Corsini into giving false testimony at the ICC hearing, JA31, Compl. ¶¶ 98–99, but testimony is not "money" or "property," *see* N.Y. PENAL LAW § 155.00(1) (McKinney 2025), it was "given" to the ICC rather than BSF, Corsini had already given the same sworn testimony in writing to the tribunal previously, JA439, 446 (describing Corsini's written witness statements and supplemental witness statements in support of the Statement of Claim), and a threat to proceed in the arbitration without Corsini is not remotely a cognizable threat. Plaintiffs never explain any legitimate inference the district court possibly could have made about their property interests: the Complaint made plain that "Plaintiffs left their bill to Dentons unpaid, were represented by [BSF] on contingency, and did not pay the imposed costs of arbitration." SPA16 (citing JA21, Compl. ¶ 54;

26

JA23, Compl. ¶ 64; JA32, Compl. ¶ 104; JA34, Compl. ¶ 112). The district court cannot fabricate favorable inferences from thin air.

Likewise, for alleged money laundering, "[t]he only transfer of funds identified by Plaintiffs is the financing from the litigation funder" that Plaintiffs allege "were illegally and fraudulently used to litigate the validity of the PPA[.]" SPA16–17. The district court rightly called these allegations of money laundering "frivolous" and, separately, barred under *Kim*. *Id.* The Complaint just presumes that any allegations of wrongful conduct in connection with the ICC Arbitration must constitute "money laundering" because funds were transferred in some form or fashion in connection with the arbitration proceedings. This is just a "legal conclusion masquerading as a factual allegation[.]" *Farag*, 2023 WL 2770219, at *2.

In short, the district court walked through the various predicate acts and identified multiple reasons why those allegations cannot support a racketeering claim. Plaintiffs' brief does not explain anywhere how this decision was incorrect.

### C. The District Court Properly Dismissed Plaintiffs' Remaining State Law Claims.

As with Plaintiffs' RICO claim, the district court gave careful attention to each of Plaintiffs' remaining state law claims.

Plaintiffs failed to allege common law fraud under Rule 9(b) because they never identified the alleged "material facts" that were concealed from or

misrepresented to the arbitration tribunal or Plaintiffs. SPA17–18. Plaintiffs failed to allege a violation of New York Judiciary Law Section 487 because "the statute does not apply to conduct outside New York's territorial borders." *Doscher*, 48 N.Y.S.3d at 593; *see* SPA18. Plaintiffs failed to allege civil conspiracy because "New York does not recognize an independent cause of action for civil conspiracy," and "Plaintiffs fail[ed] to establish any underlying tort." SPA18–19 (quoting *Kovkov v. Law Firm of Dayrel Sewell, PLCC*, 199 N.Y.S.3d 849, 849 (1st Dep't 2020)). And Plaintiffs failed to allege unjust-enrichment because Plaintiffs lost nothing (and BSF gained nothing), and because the claim was time-barred as their claims accrued at the latest when the ICC determined in May 2020 that the PPA was unenforceable. SPA19.

For each of these claims, Plaintiffs do not point to any facts alleged in the Complaint that would change or even call in to question these holdings. Instead, like with the "domestic injury" discussed above, Plaintiffs argue an entirely irrelevant issue. Plaintiffs argue that the district court erred when it dismissed Plaintiffs' state law claims with prejudice because, Plaintiffs argue, "there was no compelling reason for the District Court to retain supplemental jurisdiction." Br. at 27–28. But the district court did not exercise supplemental jurisdiction. The court had diversity jurisdiction over all claims, federal and state.

Plaintiffs' own Complaint alleges three different bases for subject-matter jurisdiction:

> This Court has subject matter jurisdiction under 18 U.S.C. § 1964(c) with respect to the claims arising under RICO. This Court in addition has jurisdiction under 28 U.S.C. §§ 1331 and 1332 with respect to diversity of citizenship and the fact that the amount in controversy exceeds $75,000, exclusive of interest and costs.

JA15, Compl. ¶¶ 16–17 (cleaned up). The district court agreed, stating that it "ha[d] subject matter jurisdiction under 28 U.S.C. sections 1331 and 1332(a), as well as 18 U.S.C. section 1964(c)." SPA2.

The Complaint did not allege, and the district court did not rely on, supplemental jurisdiction over related state law claims. There was no need because the district court had original jurisdiction over all claims based on diversity under § 1332. There is no mention anywhere in this case of "supplemental" or "pendant" jurisdiction, nor is the related statute, 28 U.S.C. § 1367, even cited once by anyone. In sum, the district court had original jurisdiction over the state law claims and properly dismissed them. Plaintiffs provide no argument as to why, based on the merits, those claims should survive.[5]

---

[5] Plaintiffs claim that there "was no cogent basis for the District Court's entry of orders of dismissal *with prejudice* of the supplemental state law claims." Br. at 28. But the district court did not abuse its discretion in dismissing all claims with prejudice, particularly where Plaintiffs never sought leave to amend nor explained anywhere, including on appeal, "what additional factual allegations it would include if leave were granted." *WC Cap. Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d

## II.   THERE ARE ADDITIONAL BASES FOR DISMISSAL THAT WERE NOT REACHED BY THE DISTRICT COURT.

Plaintiffs' claims also fail for additional reasons that were fully briefed but not addressed by the district court given that it found ample basis to dismiss the Complaint in full on alternative grounds. To the extent the Court disagrees with any reasoning of the district court for the dismissal of any particular claim, there are multiple alternative bases to uphold dismissal nonetheless. *See Yerdon v. Poitras*, 120 F.4th 1150, 1153 (2d. Cir. 2024) ("[W]e review a district court's grant of a motion to dismiss *de novo*, and may affirm on any basis supported by the record, even if the district court did not rely on the relevant ground." (citations omitted)).

### A.   Plaintiffs' Irresponsible Claims Are Implausible as a Matter of Law.

Plaintiffs' allegations against BSF are implausible, to put it lightly. They require the acceptance of absurd and contradictory assumptions: that (i) Plaintiffs engaged BSF to prosecute an arbitration claim based on the premise that the PPA was enforceable, while at the same time Plaintiffs allegedly did not believe the PPA was enforceable, despite the fact that Plaintiffs negotiated the PPA and sent a

_____

322, 334 (2d Cir. 2013) (upholding dismissal with prejudice and affirming district court acted within its discretion in denying request for leave to amend); *see also Farag*, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (summary order) (upholding dismissal of RICO and state law claims with prejudice where the plaintiff "never made a formal motion to amend" and never proposed any revisions that would cure the deficiencies).

breach notice to SENELEC *prior* to BSF's engagement, JA218; (ii) BSF would knowingly choose to prosecute a meritless arbitration claim when BSF would only collect on its investment if the claims prevailed; (iii) Mr. Corsini was "coerced" to perjure himself in a dramatic "confrontation" in a hotel room in France in the midst of his oral hearing testimony, JA31, Compl. ¶¶ 96–98, even though he had already provided sworn written testimony supporting Liberty-CITIC's breach claims prior to the alleged coercion, *see* JA439, 446 (describing Corsini's written statements), and (iv) Plaintiffs deserve hundreds of millions of dollars because they lost an arbitration that did not require them to pay fees or costs and which they now say they deserved to lose anyway. These are precisely the kind of implausible claims that courts should "flush out … at an early stage of the litigation." *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-CV-5508 (VSB), 2019 WL 1437019, at *4 (S.D.N.Y. Mar. 31, 2019), *aff'd*, No. 21-2603, 2024 WL 1090856 (2d Cir. Mar. 13, 2024). [6]

---

[6] This is not the first time Plaintiffs' counsel has brought wholly implausible RICO claims. *See, e.g.*, *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 514 F. App'x 51, 52 (2d Cir. Mar. 18, 2013) (summary order) ("We agree with the district court that [Mr. Batista] has gone to extraordinary lengths to construct a fantastical [RICO] scheme, a scheme that is ripe for dismissal simply because it defies logic.") (cleaned up); *Fiorilla v. Citigroup Inc.*, No. 22-CV-6189 (GHW), 2022 WL 11245942, at *2 (S.D.N.Y. Oct. 19, 2022) ("Mr. Batista dismissed th[i]s [RICO] action to take advantage of the safe harbor provision of Rule 11."); *Entretelas Americanas S.A. v. Soler*, No. 19-CV-3658 (LAK) (RWL), 2020 WL 9815186, at *5 (S.D.N.Y. Feb. 3, 2020), *report and recommendation subsequently affirmed*, 840 F. App'x 601, No. 20-1125-CV, (2d Cir. 2020) (summary order)

31

**B.      The RICO Claim Fails to Adequately Allege Several Key Elements Beyond Just the Failed Predicate Acts.**

"To establish a RICO claim, a plaintiff must show: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962 .... To establish such a violation, a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kim*, 884 F.3d at 103 (cleaned up).

To start, Plaintiffs cannot establish a pattern. "A 'pattern of racketeering activity' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (quoting 18 U.S.C. § 1691(5)). The predicate offenses must "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Where, as with the ICC representation here, the alleged scheme is "inherently terminable," open-ended continuity plainly does not exist. *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) (summary order) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). Nor can Plaintiffs establish the requirements of closed-ended continuity by making the requisite showing of a "series of related predicates extending over a

("[T]he Complaint does not meet the baseline standards for a RICO action, nor does it sufficiently plead the required predicate acts."); *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, at *4 (S.D.N.Y. May 20, 2015) ("[P]laintiffs have failed to adequately allege any RICO predicate acts and also failed to allege a pattern of racketeering activity[.]").

substantial period of time." *H.J. Inc.*, 492 U.S. at 242. "[C]ourts must consider the number and variety of predicate acts, the complexity and number of the schemes, and the number of participants and victims." *MinedMap*, 2022 WL 570082, at *2. This Court has held that allegations of even a twenty-nine-month scheme did not necessarily support a finding of closed-ended continuity where the victims and perpetrators were few and the goal was limited to defrauding the plaintiff. *Grace Int'l Assembly of God v. Fiesta*, 797 F. App'x 603, 605–06 (2d Cir. 2019). And other courts have recognized that allegations of fraud within a single litigation cannot satisfy the closed-ended continuity standards. *See In re Burzyinski*, 989 F.2d 733, 742–43 (5th Cir. 1993) ("All of the alleged predicate acts took place as part of the *Burzyinski I* litigation, which has ended … [and] did not constitute or threaten long-term criminal activity."); *cf. Columbia Park E. MHP, LLC v. U.S. Bank Nat'l Ass'n*, 766 F. App'x 271, 275 (6th Cir. 2019) (similar).

Under these standards, Plaintiffs' allegations of a "pattern" of racketeering conduct fail as a matter of law. Plaintiffs' allegations involve a single arbitration on behalf of Plaintiffs against a single respondent. This case is a far cry from the kind of ongoing, substantial, and broad activity involving "thousands" of lawsuits, *Carroll v. U.S. Equities Corp.*, No. 18-CV-667 (TJM), 2020 WL 11563716, at *3 (N.D.N.Y. Nov. 30, 2020), or default judgment actions filed "en masse" (with 133 actions, on average, filed per day), *Sykes v. Mel Harris & Assocs., LLC*, 757 F.

Supp. 2d 413, 419 (S.D.N.Y. 2010), that courts may find sufficient to establish the "continuity" element of a RICO enterprise that involves litigation activity.

Plaintiffs also cannot show a cognizable "enterprise," which must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs allege an "enterprise" comprised of BSF and Dentons associating together "to obtain a favorable ICC Award" through improper tactics. JA36, Compl. ¶¶ 123, 125. But Plaintiffs also allege the RICO "pattern" is based on the "indemnification agreement" that joined BSF and Dentons, and the subsequent submissions to the ICC Tribunal. Compl. JA37–43, Compl. ¶¶ 130–51. Dentons and BSF's alleged "shared purpose" in pursuing the arbitration claim "impermissibly conflate[s] the alleged RICO enterprise with the alleged pattern of racketeering activity." *Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335, at *2 (2d Cir. Oct. 31, 2022) (summary order).

Nor have Plaintiffs pled racketeering injury to business or property. *See, e.g.*, *Villoldo v. BNP Paribas S.A.*, 648 F. App'x 53, 55 (2d Cir. 2016) (summary order) (affirming dismissal of RICO claim where, among other things, plaintiffs failed to allege a cognizable injury to "business or property"). Plaintiffs do not identify an injury to business or property. The only measure of injury alleged in Count I (§ 1962(c)) is some value purportedly in excess of "the value of the contract claimed in the ICC Arbitration," JA39–40, Compl. ¶ 137, but the

34

Complaint affirmatively disavows that the PPA was enforceable, meaning Plaintiffs never had a property interest that they could lose in the first place. Count II (§ 1962(d)) alleges that "plaintiffs have been injured in their business and property, including the attorneys' fees and costs to defend themselves in objectively baseless, improperly motivated litigation in respect of the ICC Arbitration and related litigation in Senegal." JA44, Compl. ¶ 157. But while Plaintiffs allege that Dentons and BSF purportedly sought to "extract and extort legal fees, funds, and other compensation" from them, JA33, Compl. ¶ 108, under BSF's contingency representation, Plaintiffs paid no "fees, funds, or other compensation." JA23–24, Compl. ¶¶ 64–67. BSF could only recover fees as a percentage of an award paid by SENELEC—not from Plaintiffs. *Id.* And while the Complaint notes that the Tribunal ordered Liberty-CITIC to pay the costs of the arbitration, Plaintiffs know they did not pay those costs themselves under the governing contingency arrangement. JA32, Compl. ¶ 104. Plaintiffs rightly do not allege otherwise. Without a cognizable monetary loss, Plaintiffs have not pleaded RICO injury.

Finally, Plaintiffs' RICO claims are time-barred. RICO claims are subject to a four-year statute of limitations, which accrues when the plaintiff knew or should have known of his injury. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 554 (2000). Plaintiffs filed

35

the Complaint on April 26, 2024, near the four-year anniversary of the May 4, 2020, Final Award. Plaintiffs, however, cannot claim to have been injured when the ICC Tribunal declined to award them $250 million based on alleged rights under a PPA that Plaintiffs allege was never enforceable. In other words, based on Plaintiffs' allegations, it is definitively the case that nothing "accrued" on May 4, 2020, because they lost nothing on that date to which they can plausibly claim an entitlement. It is likewise apparent from the Complaint that nothing occurred after this date that could possibly have caused a timely RICO claim to accrue. And, to the extent Plaintiffs claim some injury based on alleged wrongful conduct by BSF prior to the time of May 4, 2020 Final Award—such as the supposed "extortion" and "coercion" of Corsini during the arbitration proceeding, or the supposed advice about the enforceability of the PPA that occurred years prior—all such conduct is alleged to have occurred substantially more than four years before the Complaint was filed in 2024.

## <u>CONCLUSION</u>

The district court's order should be affirmed.

Dated:  January 30, 2026
       New York, New York

              Respectfully submitted,

              **BOIES SCHILLER FLEXNER LLP**

              By: <u>/s/ *Craig A. Wenner*</u>
              Eric J. Brenner
              Craig A. Wenner
              55 Hudson Yards
              New York, New York 10001
              (212) 446-2300

                  *-and-*

              Robert M. McCutcheon
              1401 New York Avenue, N.W.
              Washington, DC 20005
              (202) 237-2727

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. App.

P. 32(f), it contains 8,641 words.

This brief complies with the typeface and type-style requirements of Fed. R.

App. P. 32 because it has been prepared in a proportionally spaced 14-point Times

New Roman font using Microsoft Word.

Dated: January 30, 2026
    New York, New York

/s/ *Craig A. Wenner*
Craig A. Wenner

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026, a true and correct copy of the

foregoing Brief of Defendant-Appellee was served on all counsel of record in this

appeal via CM/ECF pursuant to Local Rule 25.1(h)(1) and (2).

Dated: January 30, 2026
   New York, New York

/s/ *Craig A. Wenner*
Craig A. Wenner
